THE TRUSTEES OF THE ACADEMY OF RICHMOND COUNTY *vs.* BOHLER, tax-collector.

The exemption from taxation of institutions of public charity, provided for by the constitution, is of such institutions as property not as persons,—the physical things, not the ideal institutions. Therefore lands held in trust to appropriate the annual product to the erection of a poor-house and the support of its inmates forever, are not exempt. The poor-house, when erected, will be exempt, but not detached property from which its support is to be derived.

November 15, 1887.

Taxes. Constitutional law. Charities. Before Judge RONEY. Richmond county. At chambers, October 28, 1887.

Reported in the decision.

FRANK H. MILLER and WM. K. MILLER, by brief, for plaintiffs in error.

BOYKIN WRIGHT, solicitor-general, for defendant.

BLECKLEY, Chief Justice.

The testator devised to trustees and their successors, all his real estate in the city of Augusta, the annual product to be by them appropriated to the erection of a poor-house in Richmond county, and for the support of its inmates

The Trustees of the Academy of Richmond County *vs.* Bohler, tax-collector.

forever. See *City Council of Augusta vs. Walton et al.,* 77 *Ga.* 517. No poor-house has been erected, but the trustees are accumulating a fund for the purpose, and first for the purchase of a suitable site therefor, from the income of the devised property. This property, worth, say $75,000, was assessed for State and county taxes for the year 1887, including school-tax, and the trustees sought to enjoin the collection of the same. The injunction was denied.

The contention on the part of the trustees is, that the devised property is exempt from taxation by the act of December 10th, 1879, (code, §798,) under the descriptive terms " all institutions of purely public charity." The title of the act, (pamph. laws of 1878-9, p. 32,) is, " an act to carry into effect paragraph 2 of section 2 of article 7, of the constitution of this State, in reference to the exemption from taxation of certain property therein described." The body of the act provides, " that the following described property shall be exempt from taxation, to-wit: All public property, places of religious worship, and places of burial; all institutions of purely public charity; all buildings erected for and used as a college, incorporated academy or other seminary of learning; the real and personal estate of any public library, and that of any other literary association used by, or connected with, such library; all books, philosophical apparatus, paintings and statuary of any company or association kept in a public hall, and not held as merchandise or for purposes of sale or gain; provided the above described property, so exempted, be not used for purposes of private or corporate profit or income." The paragraph of the constitution of 1877, (code, §5182,) to which the act refers, provides that " the general assembly may, by law, exempt from taxation all public property," etc., proceeding from thence, in the exact language of the act, to the close of the above quotation. And in a subsequent paragraph (code, §5184,) it declares that " all laws exempting property from taxation,

The Trustees of the Academy of Richmond County *vs* Bohler, tax-collector.

other than the property herein enumerated, shall be void."

The constitution does not itself exempt anything, but only grants power to the general assembly to exempt the enumerated property, expressly denying to it power to exempt any other. That the act of 1879 was intended to be a full and exhaustive exercise of all the power granted, we have no doubt; and that the legislature construed the power as embracing property, and that alone, is equally certain; for the act declares that "the following described property shall be exempt from taxation," and then proceeds with the enumeration in the exact terms employed by the constitution, one of the particulars of the enumeration being "institutions of purely public charity." These institutions are thus mentioned as property, as physical entities; not as the owners or users of property; not as persons, corporeal or incorporeal, nor as ideal beings, which are neither persons nor property. Observe that neither the act nor the constitution mentions property of, or belonging to, institutions of purely public charity, but only the institutions themselves. No matter to whom the institutions belong, whether to a private individual, to a corporation, or to an unincorporated company or association, they are equally exempt, provided they are dedicated to charity and used exclusively as institutions of purely public charity. Hospitals, almshouses, asylums for the insane, for the deaf and dumb, or the blind, orphan asylums, homes of various kinds, soup-houses, etc., permanently established and open, without charge, to the whole public, or to the whole of the classes for whose relief they are intended or adapted, are institutions of the exempt order, irrespective of their ownership, and without regard to whether they have behind them, or connected with them, any institution in the personal or ideal sense of the term, or not.

That the word "institution," both in legal and colloquial use, admits of application to physical things, cannot be

The Trustees of the Academy of Richmond County *vs*. Bohler, tax-collector.

questioned.    One of its meanings, as defined in Webster's Unabridged Dictionary, is " an establishment, especially of a public character, affecting a community." And one of the meanings of "establishment," as defined by the same authority, is "the place in which one is permanently fixed for residence or business; residence with grounds, furniture, equipage, etc., with which one is fitted out; also, any office or place of business, with its fixtures." "The term 'institution' is sometimes used as descriptive of an establishment, or place, where the business or operations of a society or association is carried on; at other times it is used to designate the organized body." Gerke *vs*. Purcell, 25 Ohio St. 244.    See also Abbott's Law Dic., and City of Indianapolis *vs*. Sturdevant, 24 Ind. 391.    A charitable institution as an organization is neither taxed nor exempted; it is simply ignored as a subject of taxation.    So long as it is a mere spirit, its existence is undistinguished from that of other incorporeal beings.    To be recognized, it has to "materialize."    A charitable institution, in the ideal sense, may embody and manifest itself physically and impersonally in a place of business for permanent occupation, with all needful buildings, furniture, outfit and supplies, for the continuous exertion of its activities.    Whatsoever it there assembles and groups together to be used on the premises, without further change of form elsewhere, is part and parcel of the establishment, and though consisting, it may be, in large measure of personalty, the whole would be exempted from taxation.

In the case of a poor-house, the realty might embrace, besides the land covered with the necessary buildings, grounds for recreation, exercise, for pasture of the animals, and even a farm for the inmates to cultivate.    The establishment, as a whole, might embrace all these, with articles of personalty to any needful extent for supplying the inmates with all the comforts of life, and keeping them in a healthy, virtuous, cheerful and contented state of existence.    We doubt not the entire establishment, however extensive or composite, would be exempt from taxation if

The Trustees of the Academy of Richmond County vs. Bohler, tax-collector.

used directly and solely for public charity, and not as a source of profit or income. That property, though enumerated in the constitution and act of 1879, is not to be exempt if used for income, whether private or corporate, is manifest from the proviso with which the clause in both instruments concludes. The terms "private or corporate" are employed in contradistinction to public. Public property, when productive, yields public income to the State, the county, the city or the town; but all other property enumerated is either private or corporate, and if it yields income at all, it is either private or corporate income. Public property is not taxed, whether income be derived from it or not; but private or corporate property, though it be connected with the external, visible "institution," is not exempt if. used for income, since the income from such property must, by reason of its ownership, be either private or corporate, these terms being comprehensive enough to include all income whatsoever that is not public. It may be thought that the produce of a pauper farm, connected with an alms-house, would come within the terms "profit or income," and so they would, perhaps, as to any surplus over and above the consumption of the inmates and others attached to the establishment; but the main purpose being to furnish employment to the paupers, and supply them with subsistence at the seat of the institution, the element of profit or income would be altogether secondary and incidental. The property, therefore, would not be used for profit or income in the same sense as if it were farmed or rented out, and not used at all by the inmates, but by others paying for its use as productive capital. The scheme of exemption as to other than public property seems to be this: to exempt all that is used immediately and directly as a part of the establishment in the conduct of the regular business there carried on, but not such as may be devoted to other uses, such as farming, merchandizing, manufacturing, etc., and from which profit or income is derived. It is the use of the property which

The Trustees of the Academy of Richmond County vs. Bohler, tax-collector.

renders it exempt or non-exempt, not the use of the income derived from it. Cincinnati College vs. The State, 19 Ohio, 110; Library vs. Pelton, 36 Ohio St. 258; New Orleans vs. St. Patrick's Hall, 28 La. An. 212; Detroit vs. Mayor, 3 Mich. 172; State vs. Elizabeth, 4 Dutcher, 103.

Property used to produce income to be expended in charity is too remote from the ultimate charitable object to be exempt. If property is allowed to be used as taxed property, it also is to be taxed. If it competes, in the common business and occupations of life, with the property of other owners, it must bear the tax which theirs bears. Thus, if even a synagogue or a church were rented out during the week for a store-room or a shop, though divine service might be performed in it on Saturday or Sunday, and though the rents were all appropriated to religious or charitable uses, its exemption would be lost.

Moreover, it is to be noticed that until property gets into the form of the enumerated items or articles, no exemption obtains. A church or a synagogue is exempt, but not the fund raised for building such edifices; so of places of burial, buildings for use as a college, academy or other seminary of learning, public libraries, etc., books, philosophical apparatus, paintings and statuary kept in a public hall,—though all these are exempt after they are purchased and appropriated to the use contemplated, the money with which they are to be paid for is not exempt.* And money or property set apart by a testator to be used in the erection of a charitable institution, is no more exempt than is that which any living person has on hand and is about to invest, pursuant to a declared purpose, in a similar institution. When the tax officer goes forth to search for taxable property, all which he finds employed in the ordinary uses of common life, unless it belongs to the public, he is to regard as taxable. When exemption is claimed, he is not to look for persons, natural or artificial, nor for ideal beings, but for real, visible things, for

*See Mallen vs. Commissioners, 84 Pa. St. 288; Enant vs. Tax-Collectors, 36 La. An. 804.

places of religious worship, places of burial, institutions of purely public charity, colleges, academies and seminaries of learning, public libraries, and the real and personal estate used by or connected therewith, books, apparatus, paintings and statuary kept in public halls, etc., and unless they are in present tangible existence, he cannot exempt something else which he is informed will be used to produce them hereafter. In other words, he is not to spare a form of property not enumerated because, for the time being, it represents a part or the whole of one or more of the forms which are enumerated. The exemption is not a release *in personam* but a release *in rem*, and the *res* to which the release applies must be found and identified by the officer, or no exemption can be recognized. Here there is no poor-house in existence, no institution of charity established, and there is no absolute certainty that there ever will be. Such an institution is in contemplation, and provision has been made which in process of time may, and probably will, result in its actual realization, but so long as it lies in the womb of futurity it needs nothing to render it non-taxable but the simple fact that it is non-existent. When it shall come into being and into use, pursuant to the scheme of the founder, it will be exempt from taxation by virtue of the constitution and the act of 1878, should these remain unchanged, but even then the real estate in the city of Augusta from which its support is to be derived will be subject to taxation, the same as other property with which it competes in the ordinary uses of life and business. As to it the charity trust is a mere landlord, and like other landlords must pay taxes.

The injunction prayed for was properly denied. State *vs.* The Board of Assessors, 35 La. An. 668.

Judgment affirmed.